IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN BEGANDY, | ) |
|       Petitioner, | ) Civil Action No. 2:19-cv-639 |
| v. | ) |
| | ) Magistrate Judge Patricia L. Dodge |
| PENNSYLVANIA BOARD OF PROBATION AND PAROLE, | ) |
|       Respondent. | ) |

**MEMORANDUM**

Pending before the Court[1] is the Petition for a Writ of Habeas Corpus (ECF No. 4) filed by state prisoner Justin Begandy ("Petitioner"). He challenges the decision of the Pennsylvania Board of Probation and Parole ("Board") about whether to release him on parole. For the reasons set forth below, the Court will deny the Petition and deny a certificate of appealability.

**I.     Background**

In March 2007, Petitioner was charged by Information filed in the Court of Common Pleas of Allegheny County (the "trial court") with one count each of robbery (Count 1), criminal attempt to commit the crime of kidnapping (Count 2),[2] aggravated assault with a deadly weapon (Count 3),

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2] The crime of kidnapping is defined at 18 Pa. Cons. Stat. § 2901 and it provides, in relevant part, that "a person is guilty of kidnapping…if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions: (1) To hold for ransom or reward, or as a shield or hostage." 18 Pa. Cons. Stat. § 2901(a)(1). Count 2 of the Information charged Petitioner with "attempting to confine the victim to a place of isolation which constituted a substantial step toward the commission of the [crime of kidnapping] in violation" of 18 Pa. Cons. Stat. § 901(a), which is Pennsylvania's criminal attempt statute. (Pet's Ex. F, ECF No. 4-1 at p. 50.)

1

terroristic threats (Count 4), possessing instruments of crime (Count 5), simple assault (Count 6), and recklessly endangering another person (Count 7). (Pet's Ex. F, ECF No. 4-1 at pp. 49-51.) These charges stemmed from an incident that occurred on December 17, 2006. (*Id.*); *see also Commonwealth v. Begandy*, 1306 WDA 2013, 2014 WL 10795084, *1 (Pa. Super. Ct. Oct. 1, 2014) ("*Begandy I*"). On that date, Petitioner approached the victim as she was exiting her car parked at a Pittsburgh area mall. Petitioner "forced his way into her car and attacked her with a steak knife." *Id.* The victim eventually "managed to free herself and fled into the mall. She had suffered a laceration to her finger as [Petitioner] swung the knife at her." *Begandy I*, 2014 WL 10795084 at *1 n.2.

On May 21, 2009, Petitioner "entered an open plea of *nolo contendere* to all charges, except the robbery charge." *Id.* at *1. (*See also* Pet's Ex. G, Plea Hr'g Tr., 5/21/09, ECF No. 4-1 at pp. 53-55.) Petitioner's sentencing hearing was held on August 12, 2009. *Begandy I*, 2014 WL 10795084 at *1. The trial court sentenced him to an aggregate term of twelve years and four months to forty years of incarceration.[3] Petitioner's minimum sentence date expired on April 18, 2019. His maximum sentence date is December 18, 2046.

The trial court's original printed sentencing order erroneously indicated that Count 2 of the Information was the crime of kidnapping instead of the crime of attempted kidnapping. *Begandy I*, 2014 WL 10795084 at *3 n.6. It appears that, as a result, the Pennsylvania Department of Corrections' ("DOC's") DC16E Sentence Status Summary sheet contained the same error. (Pet's Ex. A, ECF No. 4-1 at p. 4; Resp's Ex. B, ECF No. 14-1 at p. 2.) Importantly, there is no allegation

---

[3] Pennsylvania's statutory sentencing scheme is indeterminate, meaning that a court will impose a sentence with two numbers, which represent the minimum and maximum period of incarceration. The minimum term is the earliest date that the defendant will be eligible for discretionary parole release and the maximum term is the date upon which the defendant may be released from confinement or parole supervision.

that the error in the trial court's original printed order affected the length of the term the trial court imposed at Count 2.

The trial court subsequently issued a corrected sentencing order which accurately reflected that Petitioner was sentenced at Count 2 for the crime of attempted kidnapping. *Begandy I*, 2014 WL 10795084 at *3 n.6; *see also Commonwealth v. Begandy*, 1210 WDA 2015, 2016 WL 5528684, *1 (Pa. Super. Ct. Aug. 13, 2016) ("*Begandy II*"). However, it appears that no correction was made to Petitioner's DOC's DC16E Sentence Status Summary sheet. (*See* Pet's Ex. A, ECF No. 4-1 at p. 4; Resp's Ex. B, ECF No. 14-1 at p. 2.)

In June 2013, Petitioner filed a motion for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"). *Begandy I*, 2014 WL 10795084 at *1. He asserted that his sentence was illegal because the trial court did not have the authority to issue the corrected sentencing order. The trial court denied Petitioner's PCRA motion and the Superior Court affirmed in *Begandy I*, which it issued on October 1, 2014. *Id.* at *1-4.

In July 2015, the trial court granted Petitioner's motion for *nunc pro tunc* relief and permitted him to file a direct appeal of his judgment of sentence. *See Begandy II*, 2016 WL 5528684 at *1. Petitioner once again argued that his sentence was illegal because of the trial court's erroneous original printed sentencing order. *Id.* On August 31, 2016, the Superior Court issued *Begandy II* and quashed Petitioner's appeal for lack of jurisdiction because it concluded that Petitioner's motion for *nunc pro tunc* relief was in actuality an untimely second PCRA petition. *Id.* at *1-2.

Although the trial court had corrected its original printed sentencing and the Superior Court's decisions in *Begandy I* and *Begandy II* accurately reflected the crimes for which Petitioner was charged and sentenced, as late as December 2017 the trial court's electronic docket sheet still

erroneously indicated that at Count 2 Petitioner had been sentenced for the crime of kidnapping instead of the crime of attempted kidnapping. (*See* Pet's Ex. K.1, ECF No. 4-1 at p. 66.) Therefore, Petitioner sent a request to Carole Eddins, the Court Administrator for the criminal division of the Court of Common Pleas of Allegheny County. He asked that the error on the trial court's electronic docket sheet be corrected. (*See* Pet's Ex. D, *Begandy v. Clerk of Courts of Allegheny County, et al.*, 443 MD 2018, slip op. (Pa. Commw. Ct. Mar. 29, 2019) ("*Begandy III*"), ECF No. 4-1 at pp. 9-10.)

Eddins responded to Petitioner in correspondence dated March 6, 2018. She informed him that the electronic docket sheet had been revised to correct the error. (*Id.* at p.10.) A printout of Petitioner's electronic docket sheet dated May 14, 2018 confirms that by that date the trial court's electronic docket sheet accurately reflected that at Count 2 Petitioner had been charged with, and sentenced for, committing the crime of attempted kidnapping. (Pet's Ex. K.2, ECF No. 4-1 at p. 67.)

In June 2018, Petitioner filed a mandamus petition in the Commonwealth Court of Pennsylvania against Eddins and the Clerk of Courts of Allegheny County. In this mandamus action, Petitioner sought an order of court directing the Clerk of Courts of Allegheny County to make further corrections to the trial court's electronic docket sheet. (Pet's Ex. D, *Begandy III*, ECF No. 4-1 at pp. 10-11.) On March 29, 2019, the Commonwealth Court issued *Begandy III*. Therein, it explained that it was transferring the case to the Supreme Court of Pennsylvania, which has general supervisory authority over the state courts. (*Id.* at pp. 16-18.) The Supreme Court of Pennsylvania denied Petitioner's mandamus petition on August 1, 2019. *See* Order in *Begandy v. Clerk of Courts Allegheny et al.*, 27 WM 2019 (Pa. Aug. 1, 2019).

Petitioner's parole interview was held on December 17, 2018, when his mandamus action was pending before the Commonwealth Court. His interview was conducted by Board Member Leslie Grey and Hearing Examiner Carrie Everett. (ECF No. 4 at p. 16.) According to Petitioner, Grey and Everett asked him about the offense of kidnapping since his DC16E Sentence Status Summary sheet still indicated that at Count 2 he was sentenced for that offense. Petitioner explained to Grey and Everett that he was not charged with, or sentenced for, the offense of kidnapping and that he could produce proof if they required it. (ECF No. 4 at p. 17.) There is nothing in the record to indicate that Grey and Everett did not accept Petitioner's accurate explanation regarding Count 2.

According to Petitioner, Grey and Everett also asked him about a detainer that federal officials had lodged with the DOC.[4] Petitioner advised Grey and Everett that his federal sentence would have expired on October 27, 2017 and, therefore, the federal detainer should be removed. (*See* Pet's Ex. C, ECF No. 4-1 at pp. 7-8.)

The Board issued a decision in Petitioner's case on December 24, 2018. (Pet's Ex. A, ECF No. 4-1 a p. 2). It explained that "following an interview with you and a review of your file, and having considered all matters required[,]" it had determined, in the exercise of its discretion, that he was denied parole. (*Id.*) The Board explained:

The reasons for [its] decision include the following:

---

[4] When Petitioner committed the crimes in his state case, he violated the term of supervised released he was serving on prior federal convictions. Petitioner explained to Grey and Everett that, by order dated October 27, 2015, the federal district court had revoked his term of supervised released and ordered that he serve a term of 24 months' imprisonment concurrently with his state sentence. (*See* Pet's Ex. C, ECF No. 4-1 at pp. 7-8.) That is why Petitioner explained that his federal sentence would have expired 24 months later, on October 27, 2017.

> Your prior unsatisfactory parole supervision history.[5]
>
> Your minimization/denial of the nature and circumstances of the offense(s) committed.
>
> Your lack of remorse for the offense(s) committed.

(*Id.*) The Board also advised Petitioner that he would be considered for parole again "in or after December, 2020[,]" and that at his next interview it would review his file and consider whether he "maintained a favorable recommendation for parole from the Department of Corrections," "maintained a clear conduct record," and an "update of federal detainer/time owed, if any to be available at time of review." (*Id.*)

In the Petition for a Writ of Habeas Corpus (ECF No. 4) Petitioner filed with this Court, he claims that the Board's decision to deny him parole violated his right to due process, was in retaliation for the mandamus action he filed in 2018 to correct the errors on the trial court's electronic docket, and violated his right against self-incrimination. Respondents have filed their Answer (ECF No. 14) and Petitioner has filed his Reply (ECF No. 27). Neither party has notified the Court that the Board has issued any parole decision regarding Petitioner since it issued the December 2018 decision at issue in this case.

## II.     Discussion

### A.     Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, which is the federal habeas statute applicable to prisoners in custody pursuant to a state-court judgment. It permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a). It is Petitioner's burden to prove

---

[5] Petitioner previously committed the crime of bank robbery when he was on parole on a state sentence. As a result, on November 13, 1998 the Board recommitted him as a convicted parole violator. (Resp's Ex. B, ECF No. 14-1 at p. 6.)

that he is entitled to the writ. *Id.*; *see, e.g., Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

### B. The Exhaustion Requirement

State prisoners typically must "exhaust their claims in state court before seeking relief in federal courts." *Slutzker v. Johnson*, 393 F.3d 373, 379 (3d Cir. 2004) (citing 28 U.S.C. § 2254(b)(1)(A)). In 2005, in *Defoy v. McCullough*, 393 F.3d 439 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit held that, aside from litigating an *ex post facto* claim, Pennsylvania law does not provide a mechanism by which a prisoner can challenge a parole denial. *Id.* at 445. Therefore, it held, a Pennsylvania prisoner who is challenging the denial of parole is exempt from the exhaustion requirement with respect to all other types of constitutional claims. *Id.*

The continuing validity of *Defoy* has been called into question, *see, e.g.*, *Bradley v. Wingard, et al.*, No. 3:15-cv-235, 2017 WL 11476608, *2 (W.D. Pa. Oct. 12, 2017), report and recommendation adopted, 2018 WL 10150909 (W.D. Pa. Sept. 5, 2018). In their Answer, Respondents point out that the Board routinely defends challenges to parole refusals filed by Pennsylvania inmates in the Commonwealth Court. Respondents assert that Petitioner's claims should be denied because he failed to exhaust them. (ECF No. 14 at p. 5 n.1.) However, Respondents also asserted that they "will not challenge the holding [of *Defoy*] in this forum, but are preserving the issue for appellate review." (*Id.*)

Because Petitioner's claims have no merit and it is more efficient for the Court to deny them for that reason, the Court will not address the issue of exhaustion further. *Roman v. DiGuglielmo,* 675 F.3d 204, 209 (3d Cir. 2012) (a federal court "may bypass the exhaustion issue altogether should [it] decide that the petitioner's habeas claim fails on the merits").

**C.     Discussion**

    1. <u>Petitioner's substantive due process claims</u>

Petitioner has no right to parole under state law. *See, e.g., Hudson v. Pennsylvania Bd. of Prob. and Parole*, 204 A.3d 392, 395 (Pa. 2019). Whether to grant him parole is a decision left to the sole discretion of the Board. 61 Pa. Cons. Stat. Ann. §§ 6135, 6137; *see, e.g., Homa v. Pennsylvania Bd. of Prob. and Parole*, 192 A.3d 329, 334 (Pa. Commw. Ct. 2018). Therefore, as explained below, so long as denial of parole is not for reasons that are forbidden by the Constitution, the grant or denial of parole is a discretionary matter that cannot be disturbed by a federal court in a habeas proceeding.

Petitioner argues that the Board's decision to deny him parole violated his substantive due process rights.[6] (ECF No. 4 at pp. 20-23.) The Fourteenth Amendment's Due Process Clause "contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Newman v. Beard*, 617 F.3d 775, 782 (3d Cir. 2010) (internal quotation and citations omitted); *see also Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980) ("Even if a state statute does not give rise to a liberty interest in parole release…, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons."). "Conduct can violate substantive due process *if it shocks the conscience, which encompasses only the most egregious official conduct.*" *Id.* (emphasis added) (internal quotations and citations omitted); *see also Hunterson v. DiSabato*, 308 F.3d 236, 248 (3d Cir. 2002) ("when an executive action is at issue, only the most egregious conduct will be considered

---

[6]Petitioner has no liberty interest in parole, *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S 1, 7 (1979), and he does not claim that the Board violated his procedural due process rights when it denied him parole.

arbitrary in the constitutional sense."). "As a general matter, it is governmental conduct intended to injure that is most likely to rise to the conscience-shocking level." *Evans v. Sec'y Pennsylvania Dept. of Corr.*, 645 F.3d 650, 660 (3d Cir. 2011) (internal citations and quotations omitted).

The Court of Appeals has explained that it would be arbitrary and capricious for the Board to base its parole decision on a reason that has no "rational relationship to the purpose of parole[,]" such as the "color of one's eyes, the school one attended, or the style of one's clothing." *Block*, 631 F.2d at 236 n.2. It has further held that it "would violate due process if [a parole board] bases a decision on constitutionally impermissible criteria such as race, religion, or the exercise of free speech rights." *Id.* at 237; *see also Newman*, 617 F.3d at 784.

Petitioner claims that the Board's decision was "arbitrary" and was "not based on any legitimate state/penological interest." (*See* ECF No. 4 at pp. 20-23.) In support, he points out that Grey and Everett asked him during his parole interview about the offense of kidnapping. He also argues that they failed to take into his account his explanation that the federal detainer lodged against him was moot since he would have completed the service of his federal sentence in 2017. (ECF No. 4 at pp. 20-22.) Petitioner also claims that the Board reached the wrong decision when it denied him parole because he contends that he is rehabilitated and is not a threat to the public safety. (*Id.* at pp. 22-23.)

There is no merit to Petitioner's claims that the Board violated his substantive due process rights. In exercising its discretion in making a decision regarding parole, state law requires the Board to consider factors such as "the nature and circumstances of the offense[s] committed," "the general character and background of the inmate," "the notes of testimony of the sentencing hearing, if any, together with such additional information regarding the nature and circumstances of the offense committed for which [the] sentence was imposed as may be available," "the written or

personal statement of the testimony of the victim or the victim's family," and "the conduct of the person while in prison and his physical, mental and behavioral condition and history, his history of family violence and his complete criminal record." 61 Pa. Cons. Stat. Ann. § 6135(a). The Board's decision reflected that it considered those required factors.

There is no basis for this Court to conclude that the Board's decision was "arbitrary and capricious" or based upon any factor prohibited by the Constitution. It was not inappropriate for Grey and Everett to inquire about Count 2 during the parole interview given the earlier clerical errors that had occurred in his case pertaining to that count. In any event, Petitioner has not demonstrated that Grey and Everett did not believe him when he explained that he was charged with, and sentenced for, the crime of attempted kidnapping and not the crime of kidnapping. That is because by the time of his December 2018 parole interview the trial court's electronic docket sheet had been corrected to reflect that Count 2 was a charge for attempted kidnapping. Additionally, documents contained in Petitioner's criminal file, including the Information, the transcript of his plea hearing, and the trial court's corrected written sentencing order, as well as the Superior Court's decisions in *Begandy I* and *Begandy II*, provided an accurate account of the charges filed against Petitioner and what occurred at his plea and sentencing hearings and in his subsequent PCRA proceedings.

Furthermore, it was not inappropriate for the Board to advise Petitioner that it would consider in his next parole evaluation an update regarding the federal detainer that had been lodged with the DOC. If, as Petitioner informed Grey and Everett, his federal sentence had expired, then Petitioner would be able to have the federal detainer removed prior to his next parole hearing.

In conclusion, in actuality Petitioner disagrees with the Board's decision and wants this Court to find that the Board erred in denying him parole. However, this Court is not evaluating

whether the Board made the correct decision and it is "not authorized to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision." *Coady v. Vaughn*, 251 F.3d 480, 487 (3d Cir. 2001).

Accordingly, based upon the foregoing, Petitioner has not demonstrated that the Board's decision violated his substantive due process rights. Thus, his substantive due process claims are denied.

2. Petitioner's retaliation claim

Petitioner claims that the Board violated his First Amendment rights by retaliating against him because he filed the 2018 mandamus action in the Commonwealth Court. (ECF No. 4 at pp. 16-19.) To prevail on a retaliation claim, the Petitioner must show that he engaged in constitutionally-protected activity and that he suffered, at the hands of the Board, adverse action. *See, e.g., Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (citing, *inter alia*, *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). Once these two threshold criteria are met, the Petitioner must then show that the protected activity was "a substantial or motivating factor" in the Board's decision to deny him parole.[7] *Id.* (quoting *Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977)).

Petitioner has not demonstrated that the Board's decision was in retaliation for filing his mandamus action. That action was filed against Eddins and the Clerk of Court of Allegheny County, *not against Grey, Everett, the Board or any of its members*. Petitioner has not explained why anyone involved in his parole evaluation would have cared that he filed the mandamus action.

---

[7] If the Petitioner had established a prima facie case, which he did not, the burden would then have shifted to the Board to prove by a preponderance of the evidence that it would have taken the same action even in the absence of the protected activity. *Rauser*, 241 F.3d at 333 (citing *Mount Healthy*, 429 U.S. at 287).

His conclusory allegation that the Board retaliated against him is not sufficient to establish it did so. *See, e.g., Gibson v. Overmyer*, 1:17-cv-188, 2018 WL 889026, *3 (W.D. Pa. Feb. 14, 2018) (inmate's bald assertion that the Board retaliated against him was not sufficient to prevail on a First Amendment retaliation claim).

Moreover, Petitioner has not demonstrated how the filing of the mandamus action against Eddins and the Clerk of Court was a "substantial or motivating factor" in the Board's decision to deny him parole. It is the Petitioner's burden to demonstrate that his constitutional rights have been violated, *see, e.g., Cullen*, 563 U.S. at 181; *Vickers*, 858 F.3d at 848-49, and he did not meet his burden here.

Accordingly, Petitioner's claim that the Board's decision to deny him parole violated his First Amendment rights because it was retaliatory is denied.

3. Petitioner's Fifth Amendment claim

Petitioner claims that the Board's decision to deny him parole violated his Fifth Amendment right against self-incrimination. (ECF No. 4 at p. 20.) His sole support for this claim is his assertion that the Board must have determined that he minimized the nature and circumstances of the offenses he committed, and also that he lacked remorse, because he accurately explained to Everett and Grey that at Count 2 he was convicted of the offense of attempted kidnapping and not the crime of kidnapping. (*Id.*)

The Fifth Amendment, as incorporated and made applicable to the states through the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. "Though a prisoner already may have been convicted and imprisoned for an offense, the Fifth Amendment still applies to ensure that the individual not be compelled to bear witness against himself or to divulge information that might

incriminate him in future criminal proceedings." *Roman*, 675 F.3d at 210 (citing *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984)). "An individual trying to make out a Fifth Amendment claim must demonstrate two key elements: compulsion and use." *Id.*

Here, Petitioner has not demonstrated how his Fifth Amendment rights were implicated in any way by the Board's decision. He does not contend that Grey and Everett compelled him to admit that he committed the crime of kidnapping. Moreover, as previously explained, there is no basis for this Court to conclude that Grey and Everett did not accept Petitioner's accurate explanation that at Count 2 he was charged with and sentenced for the crime of attempted kidnapping, given that his explanation was supported by records in his criminal file, including the Information, the transcripts of his plea hearing, the trial court's corrected written sentencing order, the corrected electronic docket sheet, and the Superior Court's decisions in *Begandy I* and *Begandy II*.

Accordingly, Petitioner's claim that his Fifth Amendment rights were violated by the Board's decision is denied.

### D. Certificate of Appealability

A state prisoner may not appeal a district court's order denying habeas relief "unless a circuit justice or judge issues a certificate of appealability[.]" 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the Court's decision that Petitioner's claims

have no merit to be debatable or wrong. Therefore, the Court will deny a certificate of appealability.

**III.   Conclusion**

Based upon all of the forgoing, the Court concludes that Petitioner has not satisfied his burden of demonstrating that he is in custody in violation of his constitutional rights. The Court will deny his Petition and it will deny a certificate of appealability.

An appropriate Order follows.

Date:  May 18, 2021

/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge